IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>JOSE FIGUEROA-SEGURA,<br><br>    Defendant. | NO.   CR 08-01356-TUC-DCB(BPV)<br><br>**REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO SUPPRESS** |

On November 5, 2008, the Defendant Jose Figueroa-Segura was indicted for illegal entry into the United States [Doc. 6]. On February 26, 2009, Defendant filed a Motion to Suppress all evidence obtained from the stop of the Defendant [Doc. 15]. The Government filed its Response on March 11, 2009 [Doc. 18].

The matter came on for Evidentiary Hearing before the Court on March 18, 2009. The Government called as witnesses U.S. Border Patrol Agents Adryan Zwick and Carlos Ramos. The Defendant called no witnesses.

The Court, having considered the briefing, arguments, and evidence presented, recommends that the District Judge, after his independent review and consideration, enter an order **GRANTING IN PART** Defendant's Motion to Suppress. Specifically, this Court recommends exclusion of the Defendant's statements, but allowing the use of the fingerprints.

1

**FACTS**

2   On October 11, 2008, the I-19 Border Patrol checkpoint in Amado, Arizona, was
3   closed due to inclement weather. Border Patrol Agent Adryan Zwick was working the
4   afternoon shift and was usually assigned to work the checkpoint. His duties on this particular
5   day were to conduct a roving patrol in the vicinity of the checkpoint.

6   According to Agent Zwick, a checkpoint shift lasts one hour. He reported for muster
7   at 4:00 p.m., had a briefing that lasted up to forty minutes, and then traveled to the
8   checkpoint. A shift change is commonly regarded as a window of opportunity for illegal
9   aliens and smugglers. I-19 is a known corridor for illegal activity from Mexico. Commercial
10  shuttles are considered suspicious for the transportation of illegal aliens because the shuttles'
11  point of departure heading north is 100 yards from the Nogales Port of Entry.

12  Agent Zwick observed several shuttles going past him at approximately 5:30 p.m.
13  When the vehicle occupied by the Defendant passed him, he decided to stop the shuttle. The
14  Defendant was one of four persons occupying the shuttle that were in the United States
15  illegally. These individuals were arrested and transported to the Nogales Border Patrol
16  Station for processing.

17  In all arrests, the Border Patrol administratively asks an alien all the questions that will
18  be asked during the second aspect of an interrogation. The only difference is that, when a
19  criminal prosecution is contemplated, the Defendant is advised of his rights pursuant to
20  Miranda. At any rate, the Defendant answered all questions he was asked and waived his
21  Miranda rights.

22  Set forth in the statement taken of Defendant is that he claimed to have two children
23  that were United States Citizens and, at the time of his arrest, no money. (Exhibit 2, page 1.)
24  Also set forth in the statement is that the Defendant has 180 U.S. dollars and 120 Mexican
25  pesos (Exhibit 2, page 2) and no immediate family in the United States (Exhibit 2, page 3).

26
27
28

**DISCUSSION**

The shuttle occupied by the Defendant was stopped by Border Patrol because, in the past, illegal aliens have been found in commercial shuttles. The Border Patrol agent had no particular suspicion as to why this shuttle should be stopped. He had global suspicions, but no specific suspicions, as to this particular shuttle:

1) I-19 is a smuggling route.

2) The stop occurred after a shift change was over, but is somehow still part of a shift change smuggling activity.

3) Commercial shuttles are often used to transport illegal aliens.

All of these factors apply to every vehicle traveling north from Nogales. Pursuant to these factors, every vehicle traveling north around 5:30 p.m. on any day the checkpoint is closed is subject to being seized. U.S. v. Cortez, 449 U.S. 411, 417-418 (1981); U.S. v. Brignoni-Ponce, 422 U.S. 873 (1975); and U.S. v. Arvizu, 534 U.S. 266 (2002), stand for much more than the Government's position in this case.

**CONCLUSION**

It is the recommendation of this Court that the District Judge, after his independent review and consideration, enter an Order **GRANTING** the Motion to Suppress Defendant's statements [Doc. 15] as fruit of an illegal search. The Defendant's identity, through his fingerprints, is not testimonial evidence and, as such, is not subject to suppression. If the Court suppressed the fingerprints, the Government could move for the Defendant's physical characteristics (fingerprints) and the Government would be back where it started. Therefore, it is the recommendation of this Court that the District Judge enter an Order **DENYING** Defendant's Motion to Suppress [Doc. 15] as to fingerprints.

Pursuant to 28 U.S.C. §636(b)(1)(B), the parties have ten (10) days from the date of this Report and Recommendation to file written objections to these findings and recommendations with the District Court. Any objections filed should be filed as CR 08-01356-TUC-DCB.

DATED this 9th day of April, 2009.

*Bernardo P. Velasco*
Bernardo P. Velasco
United States Magistrate Judge